In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4022

United States of America,

Plaintiff-Appellee,

v.

Terrill A. Walker, also known as Bishop,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99 CR 40013--James L. Foreman, Judge.

Argued November 7, 2000--Decided January 17, 2001

Before Bauer, Coffey, and Easterbrook, Circuit Judges.

Bauer, Circuit Judge. Terrill Walker was convicted of possessing crack cocaine with intent to distribute in violation of 21 U.S.C. sec. 841(a)(1) and of carrying a firearm in connection with a drug trafficking offense in violation of 18 U.S.C. sec. 924(c). The district court sentenced Walker to 295 months in federal prison. Walker now appeals his conviction arguing that: (1) the search warrant lacked probable cause and the district court erred when it denied hearings for Walker's two Motions to Suppress; (2) nine evidentiary errors denied him a fair trial; and (3) the district court erroneously considered a November 1998 transaction involving 28.35 grams of cocaine for sentencing purposes. We affirm the district court.

I. Background

The Carbondale, Illinois police department received an anonymous tip on December 15, 1998 that Janai Gails, the tipster's aunt, had rented cars and driven to Chicago five or six times to buy crack cocaine. The tipster informed police that the rental cars had license plates beginning with "LJRENT" and that other people, including defendant Terrill Walker, rode with Gails to Chicago. The tipster believed that Walker and Gails were planning another trip.

As part of their investigation, police contacted Lois Forquer, the owner of L.J.'s Auto Rentals. Forquer reported that Gails previously rented multiple cars and returned them with mileage consistent with trips to Chicago. Forquer notified police when Gails returned rental cars on December 18, 1998 and January 7, 1999. Drug-sniffing police dogs searched both cars and indicated that drugs had been present in each. Walker did not go on either the December or the January trip.

On February 11, 1999, Walker's girlfriend, Dawna Locke rented a car from Forquer. The rental agreement listed Walker as an approved driver. On February 12, Forquer informed police that Walker and Locke had rented cars on several occasions during the past month. Forquer believed that they were renting cars instead of Gails because Gails owed money to L.J.'s Auto Rentals. Two of Walker's and Locke's trips resulted in mileage consistent with trips to Chicago. Forquer advised police that Locke and Walker were then currently renting a teal four-door 1995 Oldsmobile Cutlass Supreme and were scheduled to return it on February 13, 1999.

On February 13, the police obtained an anticipatory search warrant for the Cutlass Supreme and its occupants. The issuing magistrate, however, neglected to designate the date by which the search warrant had to be executed ("expiration date"). Mere hours after the magistrate issued the search warrant, the police stopped Walker and Locke in the Cutlass Supreme. Officers ordered Walker and Locke to put their hands up. Locke complied, but Walker proceeded to stuff his crack cocaine down Locke's pants. The police took Locke and Walker into custody and transported them to the Carbondale FBI office.

The police searched Walker and Locke. They discovered approximately one ounce of crack cocaine in the crotch of Locke's pants. Walker admitted that the crack belonged to him and that he placed it in Locke's pants during the traffic stop. Further, he admitted that he obtained the crack in Chicago and that he planned to return to purchase two more ounces.

The police searched the car and discovered a loaded semi-automatic gun in the trunk. During the interrogation, Walker told police that they would not be able to find his fingerprints on the gun, but that it did not belong to Locke. Walker stated that the gun was in the trunk when he and Locke rented the vehicle. After the interrogation, Walker engaged in a proffer interview. He was later indicted for possessing

crack with intent to distribute and for carrying a firearm in relation to a drug offense.

Walker filed two Motions to Suppress, requesting hearings. The first claimed that the warrant lacked probable cause as to Walker and that the search of the trunk was out of the scope of the search warrant. The second argued that the search warrant was invalid because it lacked an expiration date. The district court denied both motions.

Walker went to trial in July of 1999, where the evidence mounted against him. Regarding the drugs, Locke corroborated Walker's admission that he owned the crack cocaine found in her pants. As to the gun, Forquer testified that her company's routine vehicle inspection found no gun in the trunk of the Cutlass Supreme at the time she rented it to Locke and Walker. Walker's half-brother testified that he saw the gun in Walker's bedroom shortly before the Chicago trip. Walker argues that nine evidentiary errors made at trial deprived him of a fair trial. The jury convicted Walker on both counts after deliberating for only 14 minutes.

The proceedings moved to the sentencing stage. The Pre-Sentencing Report ("PSR") contained information regarding approximately one ounce (28.35 grams) of crack cocaine that Walker possessed after a November trip to Chicago that he made with Gails. Although Gails provided this information to police, she refused to testify to it on the stand. Walker objected to the PSR, arguing that sentencing based on this information was wrong because (1) the November trip was too far removed in time from the February trip to be included in the same course of conduct, and (2) for various reasons, Gails was not a credible witness. At the sentencing hearing, defense counsel orally argued the course-of-conduct objection and stated that it was his only objection. The prosecutor clarified that the defense counsel meant to object only on the legal course of conduct argument and not the factual credibility argument. The defense counsel agreed with the prosecutor's characterization of his objection. The district court included the 28.35 grams of crack cocaine in Walker's total for sentencing purposes. This amount pushed Walker's total of crack cocaine over 50 grams, giving him an offense level of 32. The judge sentenced Walker to 295 months in prison. Walker appeals both his conviction and his sentence.

II.  Discussion

  A.  Validity of the Search Warrant

Walker contends that the evidence produced by the search of his person, Locke, and the rental car should be suppressed because the search warrant was invalid for two reasons. First, Walker contends that police lacked probable cause as to Walker because the anonymous tipster had no direct knowledge that Walker was involved with the drug ring and because the police failed to sufficiently investigate Walker's involvement. Second, Walker contends that the warrant was facially invalid because the issuing judge failed to write an expiration date on the warrant.

### 1. Does Defendant Have a Protected Fourth Amendment Interest?

We must first address the threshold issue of whether Walker has a protected Fourth Amendment interest that allows him to challenge the search warrant. Neither the Supreme Court nor this Circuit has squarely decided whether a driver who is not the primary vehicle lessee, but who is included on the lease as an approved driver may challenge the validity of a search warrant issued for the rental car and its occupants. However, the Supreme Court addressed a highly similar factual situation in Rakas v. Illinois, 439 U.S. 128 (1978). In Rakas, "passengers in a car which they neither owned nor leased" wanted to suppress evidence gleaned from a search of the car. Id. at 140. Applying substantive Fourth Amendment law, the Court held that the passengers could not challenge the legality of the search because they did not have a "legitimate expectation of privacy" in the car as they "asserted neither a property nor a possessory interest in the automobile." Id. at 148.

The Rakas concurrence further explained the test. It conceived the relevant test to be a two-pronged inquiry into whether the defendant had reasonable objective and subjective expectations of privacy. See id. at 151 (Powell, J., concurring). The concurrence viewed the majority's inquiry regarding possessory and property interest as addressing the objective expectation prong of the test. See id.

Four of our sister circuits have applied the legitimate-expectation-of-privacy test used in Rakas to factual situations highly similar to this case. While some circuits have adopted the concurrence's two-pronged view of the privacy test and others have used only the majority's "possessory or property interest" language, without exception, these circuits have held or implied that a person who is listed on a vehicle rental contract has a protected Fourth Amendment interest and may challenge a search of the

vehicle. See United States v. Riazco, 91 F.3d 752, 754-55 (5th Cir. 1996) (holding that a driver and a passenger in a rental car who did not rent the car, were not listed as authorized drivers on the rental agreement, and did not have permission of the renter to drive it lacked a protected Fourth Amendment right and thus could not challenge evidence produced by a search because they lacked an objectively reasonable expectation of privacy in the vehicle); United States v. Pino, 855 F.2d 357, 360-61 (6th Cir. 1988) (holding that a passenger in a rental car who was not listed on the rental agreement as an approved driver did not have the possessory interest in the car necessary to create a protected Fourth Amendment right and therefore could not challenge the search of the vehicle), modified 866 F.2d 147; United States v. Best, 135 F.3d 1223, 1225 (8th Cir. 1998) (holding that to have a protected Fourth Amendment right to challenge a search of a rented vehicle, the defendant/driver must be on the rental agreement or have the permission of the vehicle renter to drive the vehicle); United States v. Shareef, 100 F.3d 1491, 1499-1500 (10th Cir. 1996) (holding that the defendant, who was hired to drive a U-Haul, but who was not an authorized driver on the rental agreement had no protected Fourth Amendment right necessary to challenge the search of the U-Haul because he did not have a reasonable expectation of privacy due to his lack of a legitimate ownership or possessory interest in the rented vehicle).

Today, we adopt the rule that a person listed on a rental agreement as an authorized driver has a protected Fourth Amendment interest in the vehicle and may challenge a search of the rental vehicle. We arrive at this conclusion by applying the two-pronged objective and subjective expectation-of-privacy test. A person listed as an approved driver on a rental agreement has an objective expectation of privacy in the vehicle due to his possessory and property interest in the vehicle. Given Walker's obvious subjective expectation of privacy, we find that Walker, an approved driver on the rental contract, may challenge the search warrant issued for the rented Cutlass Supreme. We now consider whether the search warrant was supported by probable cause.

### 2. Probable Cause and Suppression Hearings

Walker contends that the search warrant lacked probable cause because it was supported by no legitimate evidence besides the anonymous tipster's uncorroborated belief that Walker was involved with drugs. The issuing judge must

determine if probable cause exists by "making a practical, common-sense decision" whether given all the circumstances, there exists "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1982). To uphold the search warrant, we must find that the affidavits "provid[ed] the magistrate with a substantial basis for determining the existence of probable cause." United States v. Leon, 468 U.S. 897, 915 (1983). Our Circuit has interpreted this standard to require review for clear error on the part of the issuing magistrate. See United States v. Pless, 982 F.2d 1118, 1124 (7th Cir. 1992). We will not invalidate a warrant by interpreting the affidavits in a "hypertechnical, rather than a common-sense manner." Gates, 462 U.S. at 236.

The record discloses that the police had sufficient information to support the search warrant. The tipster linked Walker to the trips to Chicago, and the police corroborated enough of the anonymous tipster's information to confirm that the tipster was a reliable source. The purpose of corroborating information given by an anonymous source is to establish the source's reliability and credibility, not to confirm all the information the source provided. See, e.g., Gates, 462 U.S. at 227. We have determined that four factors are important in assessing a tipster's credibility: (1) firsthand observation by the tipster; (2) degree of detail provided by the tipster; (3) corroboration of tipster's information by the police; and (4) testimony by the tipster at the probable cause hearing. See United States v. Lloyd, 71 F.3d 1256, 1263 (7th Cir. 1995). Here, the tipster was Gails' niece and had personal knowledge of her aunt's trips. The tipster gave details, including the rental car company, Gails' destination, Gails' companions, and the type of drugs Gails purchased. The police corroborated that the tipster's aunt frequently rented cars from L.J.'s Auto Rentals, and that many of these cars were returned with mileage consistent with trips to Chicago. Investigation with drug-sniffing dogs showed the police that Gails transported drugs on two of the trips. This information was sufficient to establish the reliability and credibility of the tipster. The police did not need to confirm any information specific to Walker to establish the tipster as a suitable source on which to base the search warrant for the car Walker and Locke rented.

The police's investigation also turned up information that directly implicated Walker. Through the rental company, police learned that Walker rented several cars from L.J.'s Auto

Rentals within a time span of several weeks. Further, it confirmed that Walker returned two of these cars with mileage consistent with trips to Chicago. We believe that this information provided the magistrate who issued the search warrant with a "substantial basis for determining the existence of probable cause"; thus the magistrate did not commit clear error.

Walker finally contends that the district court erred by refusing to grant a hearing for either of his motions to suppress the evidence uncovered by the search of the car. The first motion contended that the search warrant lacked probable cause and the second motion urged invalidation of the warrant because the issuing judge failed to designate an expiration date for the warrant.

A defendant who seeks a hearing to suppress evidence has the burden to show that there are disputed issues of material fact. See United States v. Woods, 995 F.2d 713, 715 (7th Cir. 1993) rev'd on other grounds, United States v. Monroe, 73 F.3d 129 (7th Cir. 1995). As to the motion to suppress based upon lack of probable cause, the district court found that Walker did not meet his burden of showing a disputed issue of material fact. The judge reviewed the evidence and found that under the totality of the circumstances test, undisputed facts relevant to Walker, supplied by L.J.'s Auto Rentals and the tipster, created probable cause for the search warrant. Further, the judge found that the search was valid under the good-faith exception. The district court correctly found that there were no material facts in dispute and therefore correctly denied Walker's first motion for a suppression hearing.

Further, we find no error as to the second motion to suppress, which was based upon the warrant's lack of an expiration date. The record (R. 29) reflects that Walker requested only suppression of the evidence, not a hearing. Even if Walker did request a hearing, we find that the district court did not err in denying the motion because the lack of an expiration date on the search warrant does not destroy the good-faith exception when the warrant was executed mere hours after it was issued and the police had no reason to believe the warrant was stale.


B.  Evidentiary Issues

Walker argues that nine evidentiary errors deprived him of a fair trial. Because Walker did not object to any of these evidentiary matters at trial, we review for plain error. See United States v. Lampkins, 47 F.3d 175, 179 (7th Cir.

1995). A plain error occurs when there is "an 'error' that is 'plain' and that 'affect[s] substantial rights.'" United States v. Olano, 507 U.S. 725, 732 (1993) (citation omitted). The court should exercise its discretion to correct only errors that "'seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings.'" Id. (citations omitted). None of the claimed errors rise to the level of plain error; indeed, none indicate error at all. Rather than detail the meritless claims, we simply reject the position that, individually or collectively, the rulings constitute reversible error.


C.   Sentencing

Walker argues that we should reverse and remand his sentence with instructions to the district court to disregard the 28.35 grams of cocaine that Walker obtained in November of 1998. On appeal, Walker argues that the 28.35 ounces of crack he obtained in November should not have been considered in sentencing for three reasons: (1) Gails' statement lacked reliability; (2) Gails denied the statement on the stand; and (3) Gails' estimate of the amount of cocaine was an approximation. The prosecution, however, argues that Walker has waived these objections to Gails' credibility by intentionally relinquishing them at the sentencing hearing.

A waiver is "'the intentional relinquishment or abandonment of a known right.'" Olano, 507 U.S. at 733 (citation omitted). Waiver precludes appellate review. See id. at 732; United States v. Staples, 202 F.3d 992, 995 (7th Cir. 2000) (citation omitted); United States v. Redding, 104 F.3d 96, 99 (7th Cir. 1996). In Redding, we held that when a party asserted an objection which it later affirmatively abandoned at the sentencing hearing, the objection was waived. See 104 F.3d at 99 (holding that the defense waived its right to appeal a criminal history calculation when it asserted the right at a pre-sentencing hearing, but accepted the criminal history calculation at the sentencing hearing, despite his concurrent attempts to preserve the point for later collateral attack). We believe Walker has similarly waived his credibility objection to the PSR recommendation to sentence Walker for the crack he possessed in November.

The PSR recommendation was based upon a statement Gails made to the police, but about which she would not testify. Walker clearly knew that he could object to this PSR recommendation on grounds of witness credibility. He submitted such a written objection to the district court,

which he later referred to as the "factual objection":

Moreover, the information from Ms. Gails comes from a person who herself was a suspect in making trips to Chicago, Illinois to purchase "crack cocaine" for distribution in Carbondale, Illinois. In fact, it was Ms. Gails who was first reported to be renting automobiles for these trips to Chicago. Ms. Gails has an interest in distancing herself as much as possible from conduct involving the illegal sale of "crack cocaine." Her information is therefore not reliable. Therefore, Mr. Walker contends that the use of this information in determining his relevant conduct violated his right to be sentenced based on accurate and reliable information as required by law. (citations omitted).

In summation, Mr. Walker asserts that the inclusion of 28.35 grams of "crack cocaine" in his relevant conduct based on the statement of Janaei [sic] Gails is clearly inappropriate . . . .

Objection to Pre-Sentence Report. In addition, Walker objected to the PSR on grounds that the November possession was not part of the same course of conduct as the February possession. The defense later referred to this argument as the "legal objection."

At the sentencing hearing, however, Walker intentionally relinquished the credibility (factual) objection. The district court invited Walker's counsel to make statements regarding his objections or to stand on the written objections. Walker's counsel argued the course-of-conduct (legal) objection. The judge ruled that the November possession was part of the same course-of-conduct as the February possession and that Walker could be sentenced as to both. The court then attempted to rule upon Walker's credibility (factual) objection, and the following discussion took place between the court, defense counsel and the prosecution:

COURT: Now, is there any other part of your objection that we need to pass upon, Mr. Vanni?

[DEFENSE COUNSEL]: I believe that [the course-of-conduct objection] was the sole objection I had raised, Your Honor. I don't believe there's any other facet of it that the Court has not addressed.

COURT: Well, you sort of attacked Ms. Gails' credibility on page 3, but maybe that's an alternative type of situation that you were

bringing up.

[PROSECUTION]: Your Honor, I discussed this with--that particular section with [defense counsel] prior to. When I was inquiring whether it was a legal objection he was raising or a factual objection as to her credibility, he informed me that he was making a legal objection not factual.

COURT: And I--is that right?

[DEFENSE COUNSEL]: It was designed to be a legal objection, Your Honor, yes.

COURT: Okay. All right. Then . . . I guess I've ruled upon it. I've taken the position that's a same course-of-conduct situation.

Sentencing Tr. at 13-14. By his words and by agreeing with the prosecution's characterization of his intent, defense counsel asked the court not to rule upon the credibility (factual) portion of his PSR objection. Such actions constitute an intentional relinquishment of the credibility objection. We hold that the defendant has waived his credibility objection, thus depriving us of jurisdiction to review it.

III.  Conclusion

  We hereby AFFIRM Terrill Walker's conviction and sentence.