**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David A. TUMEA, Defendant–Appellant.**

**No. 02–1997.**

United States Court of Appeals,
Seventh Circuit.

**306**

Submitted Nov. 13, 2002.*

Decided Dec. 2, 2002.

Before POSNER, COFFEY, and MANION, Circuit Judges.

## ORDER

David A. Tumea pleaded guilty to possession of an unregistered firearm under 26 U.S.C. § 5861(d), and was found guilty and sentenced to 33 months' incarceration and three years' supervised release. Tumea's guilty plea, however, was conditional, allowing him to appeal the district court's denial of his motion to suppress evidence. On appeal he argues that the police lacked probable cause to conduct a warrantless search of his car. We affirm.

At approximately 3:30 p.m. on the afternoon of October 23, 2001, Evelyn Sanders called the Madison, Wisconsin Police Department's 911 dispatch number and reported that a man who worked with her boyfriend at an automotive care clinic was in possession of homemade guns and explosives. Sanders reported that the man had told her boyfriend that he kept homemade weapons in his car, that he made explosive devices, and that he would blow up anyone who reported him to the police. She also said that the man had two black backpacks, one containing guns, the other containing books on how to manufacture guns and bombs. Sanders further stated that Robert Jepsen, a manager at the car clinic, also saw the guns and witnessed the man's threats. Sanders said that the car was similar to a Chevy Cavalier and provided its license plate number. The dispatch officer asked Sanders for the name and address of the car repair clinic, but she said she did not want to provide such information until her boyfriend finished work that day. Minutes later Sanders called again and told the dispatch officer that the man's name was "Dave." She said that Dave was working until 6:00 p.m and gave the car repair shop's address.

Approximately 10 minutes later, Sanders' boyfriend, Wilson Gibbs, called in and advised Sergeant David Jugovich that Tumea was a new technician at the clinic and described him as 5′6″, chubby, and white. Gibbs stated that earlier that day he accompanied Tumea and Jepsen to Tumea's car. While there, Tumea showed them a homemade shotgun, a .25 caliber pistol, a blow gun, and knives. Gibbs stated that

---

* The parties waived oral argument in this case; therefore, the appeal is submitted on the briefs and the record. *See* Federal Rule of Appellate Procedure 34(f).

he also saw a plastic bank money canister, but did not observe any bomb-related materials. According to Gibbs, Dave talked about using a microwave component as a weapon and declared that if anyone "blabbed," he would put a bomb on their roof. Gibbs also said that Jepsen heard these comments but did not think that Dave was serious. Gibbs described Dave's car as older and gray, similar to a Camaro.

Police checked the license plate number given by Sanders and learned that it was registered to a 1987 Camaro owned by Tumea. Police also learned that Tumea did not have a criminal record.

Jugovich relayed all of this information to Detective Victor Heitzkey, a 26–year veteran of the City of Madison Police Department, and Special Agent Jason Salerno of the Bureau of Alcohol, Tobacco and Firearms. At around 5:15 p.m., Heitzkey, Salerno, and ten officers arrived at the clinic. Heitzkey first looked into Tumea's car with a flashlight. He observed that the car was very cluttered, but did not see any obvious contraband. Heitzkey did see a police-style utility belt with pouches and a knife attached to it, and some sort of long, narrow tube.

Heitzkey and Salerno then asked Tumea to talk with them in a squad car and Tumea agreed. Heitzkey told Tumea that the police had information about him possessing dangerous weapons. Tumea, who Heitzkey described as quiet and subdued, asked "What kind of trouble could I be in?" Heitzkey responded that he did not know and that it depended on what developed. Tumea then asked what the most serious consequences could be, and Heitzkey again responded that he did not know. Tumea then said that maybe he should speak with an attorney.

Heitzkey then talked with Jepsen, who said that he had accompanied Gibbs to Tumea's car earlier in the day but that he did not see any firearms. Heitzkey then talked to another employee, Regan Cowan, who said that she had also been to Tumea's car but did not see any weapons. Both Jepsen and Cowan did say that Tumea had shown them magazines about weapons.

At 6:15 p.m. police performed a warrantless search of Tumea's car, finding a homemade shotgun and literature about explosives. Police later obtained warrants to search Tumea's apartment and his backpack, finding homemade napalm and C–4 plastic explosives. Jepsen later admitted that he had lied about not seeing Tumea with weapons.

Tumea moved to suppress the evidence seized in the car on the ground that the warrantless search was not supported by probable cause. After Heitzkey, Jugovich, and Salerno testified at an evidentiary hearing, a magistrate judge concluded that the search was supported by probable cause and recommended denying the motion. Tumea filed objections, but the district court adopted the magistrate's recommendation. *See* 28 U.S.C. § 636(b)(1)(B).

Tumea argues that the warrantless inspection of his car violated his Fourth Amendment rights. Police officers may search cars without a warrant if the search is supported by probable cause. *See, e.g., Maryland v. Dyson,* 527 U.S. 465, 466–67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (per curiam); *United States v. Ledford,* 218 F.3d 684, 688 (7th Cir.2000). Probable cause exists where the known facts and circumstances are sufficient to warrant a reasonably prudent person in believing that contraband or evidence of a crime will be found. *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). A finding of probable cause is based on probabilities, and need not rise to the level of certainty. *Illinois v. Gates,*

462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

We agree with the district court that there was probable cause to search Tumea's car. In *Gates* the Supreme Court held that a highly-detailed tip from an anonymous informant that is corroborated by independent police work is sufficient to establish probable cause. *See id.* at 246; *see also United States v. McClinton,* 135 F.3d 1178, 1183 (7th Cir.1998). Gibbs was not only an *identified* informant, but his detailed tip, tied with the police's subsequent investigation, were certainly sufficient. Gibbs identified himself and gave police a phone number where he could be reached, enhancing the information's reliability. *See Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (recognizing that tips from known informants are more reliable than those from anonymous sources because police can hold identified sources accountable for their information). Gibbs also provided specific information about Tumea's conduct that was based on first-hand knowledge. Heitzkey then corroborated enough of the tip's information to confirm that it was reliable. Although Heitzkey did not see illegal contraband while looking inside the car with a flashlight, he did observe that the car was cluttered and was able to see a knife and a canister, information consistent with the tip. Moreover, even though Jepsen and Cowan did not finger Tumea for possessing the shotgun, they both did in fact partially corroborate the tip. Both confirmed that Tumea had taken them to his car earlier in the day and had shown them magazines about weapons. *See United States v. Walker,* 237 F.3d 845, 850 (7th Cir.2001) (purpose of corroborating information is to establish source's reliability, not to confirm all the information the source provided). And Tumea's guarded responses to Heitzkey's questions further bolstered the probability that the car contained a dangerous weapon. Tumea claims that the district court unduly credited Heitzkey's experience in concluding that there was probable cause, but the Supreme Court has instructed courts making probable cause determinations to give due weight to factual inferences drawn from a police officer's experience. *Ornelas,* 517 U.S. at 700. We agree that under the totality of the circumstances test, probable cause supported the warrantless search. *See id.* at 696 (probable cause to search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found").

AFFIRMED.