UNITED STATES of America,
Plaintiff–Appellee,

v.

Joe WING, Defendant–Appellant.

No. 97–1731.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1997.

Decided Jan. 30, 1998.

John J. Scully (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Harvey M. Silets, Deane B. Brown, Jacqueline Dunn (argued), Katten, Muchin & Zavis, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge,
CUMMINGS and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

In July 1993, a five-count indictment was returned against ten defendants. Joe Wing ("Wing") was named in the first four counts.

Count One of the indictment charged that from 1978 to October 1989, Wing and three others were engaged in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). As part of the conspiracy, defendants were charged with conducting an illegal gambling business, making extortionate extensions of credit, known as "juice loans," at five percent per week, collecting juice loans and collecting "street tax" from the Chicago On Leong Association.

Count Two charged that during the same period, Wing and nine others conspired to conduct an illegal gambling business in violation of 18 U.S.C. § 371.

Count Three charged that in that time frame, Wing and nine others conducted an illegal gambling business, involving sports and horse-race bookmaking in violation of 18 U.S.C. §§ 1955 and 2.

Count Four charged that Wing and two others made an extortionate extension of credit to Simon AuYeung ("AuYeung"), in violation of 18 U.S.C. §§ 892 and 2.

In July 1996, Wing entered a plea of guilty to Counts One through Four of the indictment. In February 1997, a presentencing hearing was held concerning Wing and defendant Kenneth Hom, where Wing testified on Hom's behalf. In March 1997, Wing appeared before the district court for sentencing and his lawyer indicated his belief that the PSI (Presentence Investigative Report) was factually accurate. This prompted Judge Andersen to adopt the facts found by the probation officer as the basis for sentencing Wing to 46 months in prison and three years supervised release.

## APPLICATION OF FEDERAL SENTENCING GUIDELINES

Wing pleaded guilty to four counts alleging that he: (1) engaged in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count One); (2) conspired to conduct an illegal gambling business in violation of 18 U.S.C. § 371 (Count Two); (3) conducted an illegal gambling business in violation of 18 U.S.C. §§ 1955 and 2 (Count Three); and (4) made an extortionate extension of credit in violation of 18 U.S.C. §§ 892 and 2 (Count Four).

With respect to Count One, the racketeering conspiracy and financing the extortionate extension of credit, the district court applied §§ 2E.1(a)(2) and 2E2.1(a),[1] respectively. The court found the base offense level for this count was 20. As there were no adjustments, the adjusted base offense level was also 20.

With respect to Count One, the racketeering conspiracy, and Count Four, making an extortionate extension of credit to Simon Au-Yeung, the court applied §§ 2E1.1(a)(2) and 2E2.1(a), respectively. The court found the base offense level to be 20. As there were no adjustments, the adjusted base offense level was also 20.

With respect to Count One, the racketeering conspiracy, and the underlying On Leong Casino "street tax" collection activities, the court applied §§ 2E1.1(a) and 2B3.2(a), respectively, and the court found the base offense level to be 18. Since the conspiracy collected a total of $474,000 from the On Leong Association between 1984 and 1988, the court applied a three-level enhancement under §§ 2B3.2(b) and 2B3.1(b)(6)(D). The adjusted base offense level was therefore 21.

With respect to the gambling-related offenses (Count One, the racketeering conspiracy, Count Two, the gambling conspiracy, and Count Three, the operation of an illegal gambling business), the court applied §§ 2E1.1(a)(1) and 2E3.1(a) so that the base offense level was 12. The court then increased Wing's offense level by three levels under § 3B1.1(b) for his supervisory role in the gambling offenses. The adjusted offense level was therefore 15. The court then made a multiple-count adjustment and reached a total offense level of 22. Wing's criminal history category was II.

1. All guidelines citations are to the 1995 edition of the Federal Sentencing Guidelines.

Judge Andersen determined that the guideline range for Wing's offense was 46 to 57 months' imprisonment. He sentenced Wing to 46 months' imprisonment, resulting in this appeal.

## WING'S SENTENCING ARGUMENT

Wing attacks two findings made by the district court in connection with his sentence. First he claims that the court erroneously found that he played a "supervisory role" in the illegal gambling operation. He also claims that the court erroneously found that the collection of "street tax" payments from the On Leong Chinese Association was "relevant conduct" based on Wing's conspiratorial role. Judge Andersen considered that conduct when he calculated Wing's base offense level for the racketeering conspiracy charge in Count One.

**The district court's adoption of the findings in the PSI justified increase of defendant's offense level by three levels**

■ At the presentence hearing for Wing, he raised no objection to the PSI's finding that he had a supervisory role in the operation of the illegal gambling business. At the March 4, 1997, final sentencing hearing, Wing's counsel stated that the PSI's recitation of the facts of the offense to which Wing pled guilty was "factually accurate" (March 4, 1997, Tr. at 11–12). Consequently Judge Andersen stated that he was making those findings of fact the basis for the sentencing. That procedure is sufficient to justify a supervisory enhancement. *United States v. Hall*, 109 F.3d 1227, 1234 (7th Cir.1997); to the same effect see *United States v. McKinney*, 98 F.3d 974, 982 (7th Cir.1996), certiorari denied, —— U.S. ——, 117 S.Ct. 1119, 137 L.Ed.2d 319; *United States v. Carson*, 9 F.3d 576, 585 (7th Cir.1993), certiorari denied, 513 U.S. 844, 115 S.Ct. 135, 130 L.Ed.2d 77. Moreover, Wing specifically agreed to the district court's reliance on the PSI (March 4, 1997, Tr. at 11–12). Since there was no evidence controverting the information in the PSI, the district court could rely entirely on the PSI. *United States v. Mustread*, 42 F.3d 1097, 1101 (7th Cir.1994). Indeed Rule 32(b)(6)(D) of the Federal Rules of Criminal Procedure expressly permits a district court to accept a PSR (Presentence Report) as its findings of fact. That reasoning applies to the PSI here since defense counsel conceded its factual accuracy. *United States v. Musa*, 946 F.2d 1297, 1308 (7th Cir.1991). *United States v. Patel*, 131 F.3d 1195 (7th Cir.1997), is inapplicable because there the district judge did not adopt the PSR's recommended findings (131 F.3d at 1202, 1203, 1204). Instead of adopting the probation officer's conclusion that the base offense level for Wing was 19, with a three-level supervisory adjustment, the district court held that the base offense level was 12, with three levels added for Wing's role as a supervisor (March 4, 1997, Tr. at 36–37). The finding that the defendant was a supervisor accords with his guilty plea to Counts One and Two, which described him as a supervisor.

In pertinent part the PSI states that of the ten defendants engaged in organized criminal activity, "Joe Wing is the third most culpable defendant. He supervised the crew's illegal gambling and juice loan operations in the Chinese community [in Chicago] and was aware of all aspects of the crew's criminal activities" (PSI 3).

Under the heading "The Offense Conduct," the PSI found (at 2–3):

> The 26th Street Crew sustained itself financially through sports bookmaking, including the taking of wagers on horse races both inside and outside of Illinois; the operation of illegal gambling businesses; the extension of loans which carried usurious rates of interest ("juice loans"); and the collection of extortion payments ("street tax") from persons who were operating various businesses, including illegal gambling businesses. Wirerooms (at least 12 different locations in Chicago, Illinois), telephones, cellular telephones, mobile telephones, code numbers, and pagers were utilized to facilitate the illegal gambling. With respect to debts owed to the crew, the threat of violence, including physical harm to the debtor or his property, was used to ensure repayment.

As to Wing, the PSI found (at 3–4):

The defendant recruited bettors from the Chinese community, had clerks working for him in the wireroom, "settled up" with bettors as to their losses or winnings, and delivered the profits from the gambling business to Piscitelli. The defendant also served as a "go-between" between Lamantia and Piscitelli and certain individuals who received extortionate extensions of credit, by arranging for and delivering the juice loan money and collecting on those loans in some cases. The defendant was aware of the street tax being levied against On Leong, although he had no direct involvement in those activities.

**Three-level enhancement was justified because there were more than five participants in the scheme**

■ For the first time Wing contends that the three-level enhancement for his supervisory role in the illegal gambling business was improper because there were fewer than five participants in the scheme. This objection was not advanced in the district court. Moreover, Wing pled guilty to Counts Two and Three, both of which alleged "five or more persons spanning an 11–year period." Also, in the district court Wing admitted that this gambling business involved five or more persons (July 2, 1996, Tr. at 5–6). Ten defendants were named in the gambling counts of this indictment, and all were convicted. Finally, co-defendant Hom testified at the joint presentence hearing that six persons including Wing participated in the Chinese part of the illegal gambling business.

**"Street tax" payments from the On Leong Association were properly considered**

■ Defendant contends that street tax payments from the On Leong Association should not have been considered as relevant conduct under Guideline § 1B1.3. At his blind guilty plea to Counts One through Four, Wing admitted that he was a member of this conspiracy to conduct the affairs of the enterprise through racketeering activity as well as other criminal activity. However, he denied that he had anything to do with the gambling operations of the On Leong Association. He did not deny that his co-

conspirators collected an illegal "street tax" from the On Leong based on its operation of an illegal gambling casino or that the street tax collected from the On Leong totaled $474,000. He did deny that the street tax collection was "relevant conduct" under Guideline § 1B1.3. In addition to Wing's denial that he personally participated in that street tax collection, his counsel acknowledged that Wing knew of the street tax but alleged Wing's lack of personal involvement. However, this phase of the conspiracy was reasonably foreseeable to Wing as in furtherance of the conspiracy to which he belonged. *United States v. Carrozza,* 4 F.3d 70, 74, 75, 83 (1st Cir.1993), certiorari denied, 511 U.S. 1069, 114 S.Ct. 1644, 128 L.Ed.2d 365. As Judge Andersen found, "a reasonable inference from the evidence was that he [Wing] knew there was a street tax involved for the entire period * * * and that the $474,000 was a correct amount" (March 4, 1997, Tr. at 36). In any event, Wing may not challenge the street tax figure for the first time on appeal. *United States v. Blackwell,* 49 F.3d 1232, 1234 (7th Cir.1995). He declined to challenge this figure in the court below. (March 4, 1997, Tr. at 19–20).

Judgment affirmed.