In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-1860

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SYLVANUS T. WILLIAMS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 02 CR 115—**Theresa L. Springmann**, *Judge.*

ARGUED FEBRUARY 12, 2007—DECIDED AUGUST 1, 2007

Before KANNE, ROVNER, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Sylvanus Williams was ar-
rested after police found a stolen gun in his car and
marijuana in a bag that he had left behind in a store. A
search of his car led to additional drug-related charges
being brought by the United States, and after two years
of pre-trial wrangling a jury convicted him on three
counts. He raises four issues on appeal: he challenges the
admission of certain evidence which he argues was seized
in violation of his Fourth Amendment rights, he argues
that his right to due process of law was denied, he chal-
lenges the district court's sentence, and he challenges
the constitutionality of the United States Sentencing

Guidelines' distinction between cocaine base and cocaine powder. Because we find no error, we affirm.

## I. BACKGROUND

On November 17, 2002, Williams was at the Dolly Madison Thrift Bakery in Fort Wayne, Indiana. He had been in the store for about ten minutes, and his behavior had made the store clerk uncomfortable enough that she triggered a silent alarm. She believed at the time that Williams was about to rob her, but the parties all agree now that there is nothing in the record to prove that he was actually getting ready to rob the bakery that day. But it turns out that he was carrying marijuana and quite a bit of cash on his person, and out in the parking lot his car contained crack cocaine, powder cocaine, a digital scale, a stolen handgun, and yet more cash.

The police arrived in response to the clerk's silent alarm, and she indicated that Williams was the person whose behavior had made her nervous. The officers stopped Williams and patted him down for weapons in accordance with *Terry v. Ohio*, 392 U.S. 1 (1968). They found no dangerous items, but did find $789 in his pants pockets. The parties agree that Williams identified himself by name to the officers, and gave them his license to corroborate his identity.

The officers' version of events is that one of them, Officer Taylor, recognized Williams's name from earlier in the day. Taylor would later testify that about forty-five minutes before the events at the bakery, an Oldsmobile had pulled in front of him and then made a left turn without a signal. He also testified that he had run a check of the car's license plates, and the check had returned Williams as the owner of the car, a picture of Williams, and information that the car was not stolen and

that there were no warrants outstanding for Williams. Because he was on his way to a shift meeting, and because the traffic infraction was minor, he decided not to stop Williams at that time. But Williams's name stuck in his mind when he encountered Williams again within an hour. Taylor later testified that he became suspicious when Williams then denied having driven to the store, denied having been driving the Oldsmobile that Taylor had seen earlier in the day, and claimed that he had driven his girlfriend's Ford Taurus to a nearby mall and had walked to the bakery.

The officers testified that another customer soon told them that Williams had driven an Oldsmobile to the bakery, and that the car was out of sight behind a large truck. Williams denied that the car was his, but Taylor recognized the car as being the same one that he had run a check on earlier in the day. Taylor's testimony was that he went to the car and looked into the window and saw a part of a gun under the front seat, and that the driver's door was ajar. He opened the door, took the gun out of concern for public safety, and checked the serial number of the gun. It came back as stolen.

Meanwhile, another officer had gone into the store to look at the surveillance video. The officers testified that the video showed Williams behaving in a suspicious way. After buying his toaster pastries, he was about to leave the store. For some reason (we might infer that he saw the police arriving, but his motive is subject to speculation at this point) he retreated into the store to a corner where he was out of sight of the store's camera and then re-emerged without his bag of bakery goods. A search of the store ensued, and his bag was discovered. In it, in addition to the baked goods that he had just purchased, was a quantity of marijuana.

Williams was arrested. He refused to consent to a search of the Oldsmobile, so the officers called for a canine

search of the exterior of the car. When the dog alerted to the presence of contraband, the car was impounded and a search warrant was issued to search the interior of it. Upon executing the search warrant, officers discovered the cocaine, digital scale, and additional money in the glove box.

Facing drug and weapons charges based on what was found in the car, Williams moved to suppress all evidence seized from the car as the fruit of an improper arrest. After wrangling about whether Williams had standing to challenge the admission of the evidence—the government contends that he had disavowed any property interest in the car—the district court conducted a suppression hearing and the parties submitted briefs on the merits. Williams argued that after the officers had determined that he was unarmed and that neither a robbery nor an attempted robbery had occurred, their justification for temporarily detaining Williams had dissipated. He argued that the further questioning exceeded the scope of the *Terry* stop. He also argued that the search of the vehicle was conducted without a warrant.

The government contended that Williams's evasive answers to the officers' questions and the information that they received from other store patrons only increased their suspicions, rather than dissipating them. The government argued that the stolen gun was found in plain view through the window of the car, and that the stolen gun in his car gave them probable cause to arrest Williams. They also noted that the search of the car which resulted in the seizure of the cocaine and digital scale had been conducted pursuant to a search warrant that had been obtained after the canine alerted to the car.

The district court denied the defendant's motion to suppress. The court found that the police were within the scope of their *Terry* stop up until the time that the officers

had probable cause to arrest Williams based on finding the stolen gun in plain view in Williams's car and the marijuana in the store. The district court specifically noted that either the stolen firearm or the discovered marijuana was sufficient to give the officers probable cause. R. 45 at 10.

Williams then fired his appointed attorney. As pre-trial motions progressed, Williams grew increasingly dissatisfied with his new counsel, and fired his second appointed attorney. The court appointed his third counsel. Williams, *pro se,* filed a second motion to suppress. The court struck his *pro se* motion to suppress because Williams was represented by counsel. *See United States v. Gwiazdzinski*, 141 F.3d 784, 787 (7th Cir. 1998) ("A defendant does not have an affirmative right to submit a pro se brief when represented by counsel."). His third appointed counsel filed a motion to reconsider the original motion to suppress. In that motion, Williams's third counsel argued that Williams's first counsel had failed to present evidence that would have refuted the government witnesses' testimony about the events at the store. To support the motion to reconsider, Williams included a report from a defense investigator that purports to be a time-line of the store surveillance videotape. The investigator's report pointed to what Williams claimed were inconsistencies between the videotape and the officers' testimony at the suppression hearing. Although many of the inconsistencies were minor, two observations are worth noting here: (1) that the videotape showed Williams being led away with his hands handcuffed behind his back long before the officers claimed that they had probable cause to arrest him, and (2) that the time from the police arriving at the store to the discovery of the marijuana was longer than the officers had testified to at the suppression hearing.

The district court denied the motion to reconsider, and noted that none of this changed the court's decision with

respect to whether the detention and investigation exceeded the scope of the *Terry* stop, and also reiterated that the discovery of the gun gave the police independent probable cause to arrest Williams regardless of how long it had taken them to find the marijuana. R. 80 at 6. The court did not specifically address Williams's new contention that the videotape showed him being led away in handcuffs early in the course of the *Terry* stop. But the court did note that much of Williams's third lawyer's memorandum was couched in terms of constitutionally ineffective assistance of counsel (on the part of the first lawyer) for failing to raise these issues during the first motion to suppress. The district court, in denying the motion to reconsider, assured Williams that even if these items had been brought to the court's attention on the first motion, its decision would not have changed and that Williams was not prejudiced by his first counsel's failure to mention these inconsistencies. R. 80 at 5-8. Williams now denies that the motion to reconsider was ever based on allegations of ineffective assistance of counsel, Oral Arg. Tr. at 18:10 to 18:25, but the record makes it clear why the district court felt it necessary to consider questions of ineffective assistance. In the motion to reconsider, even after clarifying that an eventual ineffectiveness claim would likely be raised under 28 U.S.C. § 2255, Williams had argued that "by granting this motion for reconsideration, this Court can cure any ineffectiveness of prior counsel by allowing the issues raised in the *Motion to Suppress* to be fully and fairly litigated, notwithstanding the failure of prior counsel to present relevant and significant evidence." Def. Mot. for Reconsideration, May 16, 2004, at 6.

After a couple more months of pre-trial motions, Williams filed a second motion to suppress, this time on different grounds, and fired his third attorney. The purpose of this second motion to suppress (or third, if we

were to count the *pro se* motion) was to preserve a constitutional error in the event that a pending case in the Supreme Court would have invalidated the canine sniff of his car. That motion was withdrawn a few weeks later by Williams's fourth appointed attorney. But not to be left out, the fourth attorney filed a new motion to suppress. Specifically, he made the following five arguments. First, he argued that Williams was interrogated in violation of *Miranda v. Arizona*, 384 U.S. 486 (1966), and that all statements he made should be suppressed. Second, he argued that the police were "not justified" in searching Williams's car. Third, he argued that the plain view doctrine did not apply to the gun that Taylor saw through the car window. Fourth, he repeated the previous arguments that the police had exceeded the limits of the *Terry* stop. Fifth, he challenged whether there was probable cause for the warrant that eventually led to the search of the car and demanded a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154 (1978).

The court noted that the third motion to suppress "has the ring of the second motion to reconsider." R. 118 at 1. As to any arguments that the defendant had made in the past, the court noted that "[t]he Defendant's repetition, although persistent, offers nothing to this Court that would enable it to reconsider its denial of the Defendant's original Motion to Suppress, and its reaffirmation in the Order denying the Defendant's Motion to Reconsider." *Id.* at 2. The court then addressed the *Miranda* argument, dispensing with it easily because Williams had failed to refer to anything in the record to show that he made any incriminating statements while subject to a custodial interrogation. *Id.* at 2-3. Likewise, the court noted that Williams had failed to cite to any fact that would support his argument that the court should conduct a *Franks* hearing. *Id.* at 3.

After an unsuccessful attempt to have the district judge recuse herself (accompanied by the occasional letter from Williams to the Chief Judge of the district alleging that the district court was biased against him) the case finally went to trial. A jury found Williams guilty of: (1) possessing cocaine base (crack) with intent to distribute, 21 U.S.C. § 841(a)(1); (2) possessing cocaine (powder) with intent to distribute, 21 U.S.C. 841(a)(1); and (3) being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). The court sentenced Williams to concurrent terms of 189 months' imprisonment on the drug counts and a concurrent term of 120 months' imprisonment on the weapon charge.

On appeal, Williams's sixth attorney (we granted Williams's motion to discharge his fifth lawyer, also) makes four arguments: he repeats the argument that the district court should have suppressed the evidence, he argues that the suppression hearings and the district court's actions violated the Fifth Amendment, he argues for the first time that his sentence is unconstitutional because it is based on facts not found by a jury beyond a reasonable doubt, and he argues that the distinction between powder cocaine and cocaine base in the United States Sentencing Guidelines is unconscionable and unconstitutional.

## II. ANALYSIS

### A. *The Fourth Amendment Claim*

Williams argues that he was arrested without probable cause shortly after the officers arrived, and that all evidence seized thereafter must be suppressed. We observe that Williams does not repeat his previous argument that the plain view doctrine did not apply to the stolen gun in the car, as well he should not: "[t]here is no legitimate

expectation of privacy . . . shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown*, 460 U.S. 730, 740 (1983). Police may take weapons from a car in the interest of public safety when they have been left lying about unattended. *United States v. Wilson*, 2 F.3d 226, 233 (7th Cir. 1993) (citing *Cady v. Dombrowski*, 413 U.S. 433, 448 (1973); *United States v. Ware*, 914 F.2d 997, 1000-01 (7th Cir. 1990)).

This narrows the issue for us on appeal. The parties agree that the police had reasonable suspicion to temporarily detain Williams at the outset of the encounter. The discovery of a stolen handgun inside the car that Williams owns and was seen driving forty-five minutes earlier, along with his subsequent denial of ownership of the car, established probable cause to arrest him. *See United States v. Cipriano*, 765 F.2d 610, 612 (7th Cir. 1985) (finding probable cause to arrest a defendant who denied any connection with luggage containing contraband when other evidence established that there was such a connection). The question is whether anything in the intervening time period amounts to a violation of Williams's rights under the Fourth Amendment. When reviewing an appeal of a motion to suppress, we review questions of law *de novo* and questions of fact for clear error. *United States v. Hagenow*, 423 F.3d 638, 641-42 (7th Cir. 2005).

Confronted with the motion to reconsider, the district court specifically gave Williams the benefit of the doubt about whether the videotape (and therefore, the marijuana discovered after the officers viewed it) played any role in the officers' development of probable cause to arrest him. R. 80 at 6. The court found, based on the newly presented evidence, that over the course of four or five minutes the police developed probable cause to arrest Williams. *Id.*

Although "four or five minutes" might be a shade on the low end, this estimate does fit very closely with the time-line as Williams now claims it to be. Williams was questioned for approximately two and one-half minutes before the police moved him to the nearest patrol car. Appellant's Br. at 19. According to Williams's videotape time-line, another customer pointed out the location of Williams's Oldsmobile less than one minute later, or between three and four minutes after the police first stopped Williams. If the district court credited Taylor's testimony, it was only a matter of minutes from the time that the Oldsmobile was pointed out to them that he had retrieved the gun that was lying in plain view. There is ample evidence in the record to support a conclusion that the police had probable cause to arrest Williams for possession of a stolen firearm between four and ten minutes after their first contact with him.

However, Williams maintains that the store surveillance videotape shows him being taken away with his hands handcuffed behind his back just two and one-half minutes after the police first stopped him. Appellee's Br. at 19. This is an argument that he first made during the motion to reconsider the first motion to suppress. The government's witness at trial, Taylor, testified that Williams was not handcuffed at that time, but was being placed into a police car so that the officers could investigate his seemingly deceptive answers about the car that Taylor had seen him driving earlier in the day. In addition, the government cites a series of cases holding that handcuffing him would not necessarily equate to arresting him. Appellee's Br. at 18 n.10.

Williams argues that if the videotape actually showed him handcuffed at that time, we should question whether he was unlawfully arrested and the evidence that followed from that arrest would need to be suppressed. But we need not decide that issue of law: we have reviewed the

videotape, and it does not support Williams's view of the facts. The tape does not show whether Williams's hands were handcuffed, and to the extent that any details can be made out, the tape appears to show that his hands were in front of his body, not behind his body. Of course, whether his hands were in front of his body or behind his body would not be dispositive on the question of whether he was arrested without probable cause, but it goes to the question of the reliability and credibility of the evidence that was presented to the district court. On the question of whether Williams was led to the police car with his hands handcuffed behind his back, the district court had to weigh Taylor's testimony and the investigator's conclusion. The videotape itself does not contradict Taylor's testimony, but it does appear to contradict at least one aspect of Williams's version of events. It appears that the district court weighed the evidence, reasonably made what credibility determinations were necessary, and did not improperly credit any "exceedingly improbable testimony." *United States v. Adamson*, 441 F.3d 513, 519 (7th Cir. 2006).

This cannot be the end of the Fourth Amendment analysis, however. Even if Williams was not handcuffed when he was moved to the police car, we must consider whether the officers' actions violated the Fourth Amendment in any other way during the period of time after they arrived and before they had probable cause to arrest Williams for the stolen gun or the marijuana. Williams repeats the argument here that he has made since the beginning: that even though the police had reasonable suspicion to temporarily detain him under the *Terry* standard when they arrived, their actions exceeded the legitimate scope of the stop and that this tainted the evidence that they seized.

Williams argues that once he had identified himself to the officers and they determined that he did not have any

weapons, they no longer had a reasonable suspicion that he was engaged in criminal activity and they were not justified in detaining him any longer. We disagree. The law requires only that the officers have a "reasonable suspicion that criminal activity may be afoot" in order to temporarily detain somebody. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation omitted)). Reviewing courts must look at the totality of the circumstances to determine if the officer had a particularized and objective basis for the suspicion. *Id.* Even if we assume that an armed robbery had been ruled out by this point in the events, the police officers were confronted with a person who denied owning and driving the Oldsmobile that one of the officers had seen him driving less than one hour earlier.

Although the parties dispute exactly how many minutes elapsed between the initial *Terry* stop and the discovery of the stolen gun, the tape and the testimony make clear that the police quickly moved to investigate the conflicting stories of Williams and the store customer and it was a matter of minutes from the initial contact to the development of probable cause. During that time, even when confronted with the fact that two people had seen him driving the Oldsmobile, Williams continued to deny that it was his. This gave the officers further grounds for suspicion. Then, having found the Oldsmobile in the parking lot, the officers could also have found it suspicious that upon their arrival Williams had previously been trying to leave the parking lot on foot. Appellant's Br. at 4. In the totality of the circumstances, we believe that the officers acted diligently to investigate a suspicious story and that their decision to detain Williams was supported by reasonable suspicion throughout the encounter from the time that the clerk identified him to the time that the stolen gun was found. Williams, perhaps, was simply

unlucky: the only officer in Fort Wayne that day who might reasonably have doubted his story about driving his girlfriend's car was the very one who responded to the silent alarm. Taylor's reasonable suspicions quickly unraveled Williams's story.

Williams argues that we should measure the reasonableness of the officers' actions against the time it took them to discover the marijuana, not the stolen gun. Appellant's Br. at 18. At the suppression hearing, Taylor testified that when Williams was eventually arrested it was for the marijuana that was found in the store. Recall that the drugs which eventually formed the basis for the federal charges against him were not found until after the search warrant was issued for the car, or about three days after the events at Dolly Madison. Williams was not charged with a crime in relation to the gun until over a month later, and even then the charges were that he was carrying the gun without a permit, not that he possessed a stolen gun. Appellant's Reply Br. at 7. The officers' stated reason for arresting Williams was possession of marijuana. The officers' testimony was that the marijuana was not found until after they viewed the videotape of his activities inside the store. By this view of the facts, the marijuana could not have been discovered for at least twenty minutes, or perhaps as long as one hour, and the intervening time between stopping him and the existence of probable cause was excessive.

But Williams's argument here is foreclosed by *Devenpeck v. Alford*, 543 U.S. 146 (2004). In *Alford*, a civil suit under 42 U.S.C. § 1983 turned on whether the arresting officers had probable cause to arrest Alford. The Ninth Circuit had reversed judgment in favor of the officers, rejecting the officers' claims that even though they incorrectly cited one crime as the grounds for arrest, they actually already had independent probable cause to arrest Alford for other crimes. *Id.* at 151-52. Like here, in *Alford* the

other crimes were never charged. *Id*. at 150-51. The Supreme Court reversed the Ninth Circuit and held that as long as the officers had probable cause to arrest Alford, it was irrelevant that they had eventually charged him with different crimes. The Court held that its Fourth Amendment precedents:

> make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.

*Id*. at 153 (internal citations and quotations omitted).

Such is the case here. Once the officers knew that they had retrieved a stolen gun from Williams's car, they had probable cause to arrest him. Once they had that probable cause, it is irrelevant that their investigation eventually found evidence of other crimes, that he was originally charged with those other crimes, or that the those crimes were charged based on an investigation that dragged out longer than was warranted by their original reasonable suspicion.

### B.  Fifth Amendment Claim

Williams also presses another argument: that the procedures below were so flawed that he was denied due process of law. U.S. CONST. amend V. The remedy that Williams seeks is that we remand the case to the dis-

trict court for yet another proceeding on a new motion to suppress and a new trial.

Williams seems to have three major concerns with the procedures below. He argues that the district court was wrong to consider any of his arguments from the perspective of ineffective assistance of counsel. He faults the district court for not conducting an entirely new suppression hearing and cites to *United States v. Regilio*, 669 F.2d 1169 (7th Cir. 1981), in support. Finally, he argues that Taylor's testimony at the original hearing was so full of perjury that it was "wholly discredit[ed]" by other evidence. Appellant's Br. at 20. We held above that the district court's consideration of questions of ineffective assistance was reasonable given that Williams's own briefs before the district court raised that issue. And as we held above, the district court's decision to deny the motion to suppress was correct. Given these circumstances, his choice of remedy (another hearing on a motion to suppress) would do him no good unless Taylor's alleged perjury were not part of the new proceedings before the district court.

We will assume, without deciding, that Williams is correct that he is entitled to a new hearing. What would that new hearing give him? As long as the district court credited Taylor's testimony about the amount of time that elapsed between the time that the other customer showed the officers the Oldsmobile and the time that he discovered the stolen gun, then the officers' actions were within the scope of their legitimate *Terry* stop and the seized evidence should be admitted. Williams's point is that the discrepancies in Taylor's testimony should lead the court to *not* credit his testimony about that time-line.

He bases his accusations on the store surveillance videotape and on disparities between Taylor's testimony at trial and his testimony at the suppression hearing. He

alleges that the perjury concerned the duration and scope of his pre-arrest detention as well as the time that the other store customer pointed the police to Williams's Oldsmobile. Although there were "other inconsistencies" in his testimony, Williams argues that these three examples "profoundly demonstrate" that Taylor lied under oath. Appellant's Br. at 20.

We are not persuaded. Taylor testified that he arrested Williams for possession of marijuana about ten minutes after approaching him. The videotape shows that he could not have found the marijuana until some time at least twenty-one minutes after first stopping Williams. Williams alleged at one point that a full hour had elapsed before the marijuana was discovered. Taylor was testifying nearly nine months after the events in question, and Williams provides nothing to suggest that this discrepancy is a result of a "willful intent to provide false testimony" rather than "confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (tracing the development of the federal "common understanding" of what constitutes perjury). This disparity does not, as the appellant urges, "wholly discredit Taylor's testimony." Appellant's Br. at 20.

As we noted above, Williams's contention that he was handcuffed when first placed in the police car is not supported (and possibly partially refuted) by the videotape. The other inconsistencies that Williams finds, including the time that the other customer pointed the officers toward the hidden Oldsmobile, all appear to be within the scope of normal instances of confusion, mistake, or faulty memory, and, in any event, many of them do not rise to the level of material statements. The point of a trial is to reconcile differing versions of facts in the record. Not every discrepancy in the record equates to perjury.

So Williams's due process argument must fail also. Not because he was not entitled to another hearing—we leave

that question for a different case. But rather because even if he were to succeed in getting another suppression hearing, the district judge would be considering the same testimony, the same evidence, and the same laws as the first suppression hearing. Because we held above that the decision to not suppress the evidence was correct, his choice of remedy would therefore be fruitless.

*C. Sentencing*

Williams asserts that the district court erred by enhancing his sentence based upon facts found by the court by a preponderance of the evidence and not found by a jury beyond a reasonable doubt. He argues that this is a violation of the Fifth and Sixth Amendments, as well as *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). He did not make this objection at his sentencing hearing, waiting instead until this appeal to join the ranks of the "*Booker* protesters." *United States v. Hawkins*, 480 F.3d 476, 477-78 (7th Cir. 2007) ("Because the . . . lawyers either do not read judicial opinions or do not understand them, or cannot distinguish a majority from a dissenting opinion, or are 'in denial,' or are '*Booker* protesters,' they insist that a judge cannot be allowed to base a sentence on any facts other than those determined by the jury.").

When a defendant fails to raise a *Booker* argument before the district court, we review it for plain error only. *United States v. Macari*, 453 F.3d 926, 942 (7th Cir. 2006). The first step in evaluating whether plain error reversal is warranted is that there be an error. *United States v. Simpson*, 479 F.3d 492, 496 (7th Cir. 2007). This inquiry dies there. The district court properly calculated the advisory guidelines range, and then considered whether any factors listed in 18 U.S.C. § 3553(a) warranted a

sentence outside the guidelines range. The court found that a sentence in the middle of the advisory guideline range "is sufficient but not greater than necessary, to comply with the purposes of punishment" in 18 U.S.C. § 3553(a)(2). Sent. Tr. at 14. This is exactly what our precedent requires of the district court, and there was no error. *See United States v. Cunningham*, 429 F.3d 673, 675-76 (7th Cir. 2005) (summarizing sentencing procedures post-*Booker*).

Finally, the appellant argues that the one hundred-to-one sentencing ratio for crack versus powder cocaine is unconscionable and unconstitutional. Whether the ratio is unconscionable is a matter for Williams to raise with the legislature. Whether the ratio is unconstitutional is an argument that was not made at sentencing, so we review it for plain error. As the appellant concedes, our circuit precedent is clear that the ratio is not a violation of the Constitution. *See United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006). There was no error.

## III. Conclusion

In ruling on the various motions to suppress, the district court did not make any findings of fact that are clearly erroneous and did not err on any questions of law. The district court did not deprive Williams of due process in violation of the Fifth Amendment. The sentencing regime in place under *Booker* remains constitutional, and the sentencing disparity between crack and powder cocaine has been considered on numerous occasions by this court. Accordingly the judgment and sentence of the district court are AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*