NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 5, 2009[*]
Decided November 24, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

Nos. 06-1478 & 08-3054

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 04 CR 986-1 |
| DERRICK MOSLEY, *Defendant-Appellant.* | Samuel Der-Yeghiayan, *Judge.* |

————————

[*] After examining the briefs and records, we have concluded that oral argument in these consolidated appeals is unnecessary. Thus, the appeals are submitted on the briefs and records. See FED. R. APP. P. 34(a)(2).

No. 06-2740

UNITED STATES OF AMERICA,                    Appeal from the United States District
    *Plaintiff-Appellee,*                          Court for the Northern District of Illinois,
                                             Eastern Division.

    *v.*
                                             No. 98 CR 700-1
DERRICK MOSLEY,
    *Defendant-Appellant.*                         Milton I. Shadur,
                                             *Judge.*

**O R D E R**

    While on supervised release for a 1999 fraud conviction, Derrick Mosley tried to extort money from gospel artist DeLeon Richards-Sheffield, the wife of former New York Yankees player Gary Sheffield. Mosley's attempt led both to the revocation of his supervised release and to new federal convictions for using interstate communications to extort money, 18 U.S.C. § 875(d), and wire fraud, *id.* § 1343. In these consolidated appeals Mosley challenges the new convictions and the term of reimprisonment he received on revocation of his supervised release.

    Mosley's extortion scheme started with a November 2004 e-mail to Richards-Sheffield. There he asserted that he possessed a video tape of her having sex with singer-songwriter Robert "R." Kelly. When Mosley did not receive a reply to his e-mail, he phoned the Yankees' media-relations department; someone there referred him to Rufus Williams, Sheffield's agent and manager, and Williams in turn contacted the FBI.

    Over the next ten days Williams, now cooperating with the FBI, recorded a series of phone conversations and meetings with Mosley, a self-described minister and community activist. Mosley expressed moral outrage about the tape and asserted that he was worried that disclosure could hurt Richards-Sheffield's reputation. He opined that she desperately needed spiritual counseling, which he (conveniently) could provide—along with the tape—for $20,000. Mosley reminded Williams that anyone else might have sold the tape to a tabloid, and he threatened to "move forward" if a deal was not struck. He was arrested afer giving Williams the number of an account to which he wanted the money wired.

    At his trial in November 2005, Mosley did not present any evidence. His lawyer argued that Williams had misunderstood Mosley's intentions, which were only to help

Richards-Sheffield. The jury found the government's story more persuasive and convicted Mosley; he was sentenced in January 2006 to 27 months in prison and five years of supervised release. The district court ordered Mosley to undergo a mental-health evaluation as a special condition of supervision. Meanwhile, the new convictions prompted the government to move to revoke Mosley's supervised release from his 1999 bank fraud conviction. A different judge of the district court obliged in June 2006 and imposed a sentence of 15 months in prison and two years' supervised release; the prison term was to run consecutively to the new sentence, and the supervised release was to be concurrent with Mosley's supervision on the new convictions. Mosley completed the consecutive prison terms in February 2008 and has started his terms of supervised release.

Mosley is acting *pro se* in these appeals, but in the district court he was represented by appointed counsel. In the first of his four challenges to the new convictions, Mosley argues that the district court erred in denying his lawyer's two, *ex parte* requests for authorization to hire a private investigator. See 18 U.S.C. § 3006A(e). The district court had rejected the requests for several reasons: Mosley, it found, was exaggerating the scope of the charges; he was capable of investigating the case without help; and he had failed to furnish adequate proof of his indigence. Mosley then resubmitted essentially the same skeletal request but with financial information and a list of twelve people he wanted interviewed; the court again denied the motion. It commented that Mosley could hire an investigator himself with the $40,000 in currency that he admitted having in his apartment.

Our review is for abuse of discretion. *United States v. King*, 356 F.3d 774, 778 (7th Cir. 2004). Under the Criminal Justice Act, courts may authorize additional services that are "necessary for adequate representation." 18 U.S.C. § 3006A(e)(1); see *United States v. Smith*, 502 F.3d 680, 686 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 1270 (2008). An indigent defendant wanting to hire an investigator must first provide a specific statement explaining the need, *United States v. Knox*, 540 F.3d 708, 718 (7th Cir. 2008), *cert. denied*, 129 S.Ct. 1525 (2009); *United States v. Goodwin*, 770 F.2d 631, 634 (7th Cir. 1985). If he does so, the court must then assess whether an investigator is likely to help the defendant establish a "plausible defense." See *United States v. Winbush*, 580 F.3d 503, 509-10 (7th Cir. 2009). These requirements ensure that the government is not asked to fund a "fishing expedition." *Knox*, 570 F.3d at 719.

The district judge did not abuse his discretion in denying Mosley's two requests. Mosley never explained how an investigator could help his case other than to relieve counsel of the task of interviewing potential witnesses. All but a few of the twelve people he had identified had no conceivable link to a plausible defense. Among them were the intended extortion victim and her mother, as well as three persons who possessed the video

tape prior to Mosley's arrest; Mosley has yet to explain how sending an investigator to interview those persons could have helped him convince the jury that his intentions were misunderstood. This was an uncomplicated case, and Mosley supplied most of the evidence with his e-mail and recorded statements. Under the circumstances, there is no reason to disturb the district court's ruling.

Mosley's second argument is that the district court should have suppressed an oral statement that he made immediately afer his arrest. When FBI agents arrested Mosley at his apartment, Special Agent Timothy Keese told Mosley that the charges related to a sex video of Richards-Sheffield and asked for consent to look for the tape. Mosley, who had not yet received *Miranda* warnings, refused to give consent and added that he "already destroyed the tape." Later at the FBI office Mosley talked to Agent Keese at length, during an interview that was preceded by *Miranda* warnings and was not challenged at trial.

Mosley argued that his comment to Special Agent Keese was a response to a pre-*Miranda,* custodial interrogation, but the district court rejected that contention. We agree with that conclusion; a request for consent to search does not constitute interrogation because it is not likely to elicit an incriminating response. See, *e.g., United States v. Bustamante*, 493 F.3d 879, 892 (7th Cir. 2007); *United States v. McClellan*, 165 F.3d 535, 544 (7th Cir. 1999). Since there was no dispute about the underlying facts, there was also no need for an evidentiary hearing before the court ruled on his motion. See *United States v. Walker*, 237 F.3d 845, 850 (7th Cir. 2002).

Mosley's third argument for reversal rests on a statement made by the prosecutor assigned to handle his detention hearing. In arguing that the strength of the government's case was a factor favoring detention, see 18 U.S.C. § 3142(g)(2), the prosecutor noted that FBI agents were reviewing video tapes seized from Mosley's home and that one of those tapes appeared to be the video described by Mosley in his discussions with Williams. The tapes mentioned by the prosecutor had surfaced when, three days before the detention hearing, Mosley's lawyer had notified the prosecutor and Agent Keese that—according to Mosley—the video of Richards-Sheffield and R. Kelly was still in Mosley's apartment. Counsel relayed Mosley's offer to surrender the tape if he was released from jail, but agents instead obtained a search warrant and seized several tapes from the apartment, including two that appeared to depict women engaging in sexual activity with R. Kelly. At first the agents believed that one of those women was Richards-Sheffield, but later they confirmed that it was not, and no video of her ever was found. But at the detention hearing defense counsel, who days earlier had passed along Mosley's own representation that Richards-Sheffield *was* depicted in one of the tapes, did not contradict the prosecutor when she proffered that the tape at the heart of Mosley's extortion attempt was apparently in the

hands of the agents. Six months later, Mosley moved to dismiss the indictment on the ground that the prosecutor had lied about possessing the tape in order to bolster the government's case for detention. The district court called that contention frivolous and observed that the prosecutor's statement was qualified and, as far as the record showed, was based on what was then known to her and the agents.

Dismissal of a criminal case is not the remedy for prosecutorial misconduct that does not prejudice the defendant, see *United States v. Childs*, 447 F.3d 541, 545 (7th Cir. 2006), and since Mosley's complaint concerns only a proffer made at a pretrial detention hearing, the jury's guilty verdicts would have erased any harm flowing from unwarranted pretrial custody, see *Murphy v. Hunt*, 455 U.S. 478, 881-82 (1982). We are also puzzled by the premise that the prosecutor could have overstated the strength of the government's evidence by proffering that a sex tape apparently existed, when the prosecutor's information originated with Mosely through his lawyer. But all of these are tangential points because, as the district court recognized, Mosley had no factual basis for this serious accusation of misconduct.

In his motion Mosley did not deny that agents had found a number of video tapes in his apartment, nor did he say that he had watched or even inquired about those tapes before accusing the prosecutor of lying. At least two of the tapes the agents were reviewing did depict sexual activity, and at first the agents believed that Richards-Sheffield was in one of those videos. That conclusion squared with what Agent Keese and the prosecutor had been told by defense counsel, and even Mosley had admitted to Williams during a recorded conversation that he, too, initially misidentified a woman with R. Kelly in one of the sex videos as Richards-Sheffield. The most that one can glean from the record is that both the prosecutor and defense counsel thought at the time of the detention hearing that a tape of Richards-Sheffield and R. Kelly was in the government's possession. Mosley's later accusation of misconduct was unfounded.

Mosley's final challenge to his convictions under § 875(d) and § 1343 is even weaker than the others. He argues that Judge Der-Yeghiayan should have granted his *pro se* motion for recusal, which the court labeled as frivolous but denied because it was not filed by Mosley's lawyer. That ruling was correct; a defendant who is represented by counsel does not have the right to file his own pro se submissions. *United States v. Williams*, 495 F.3d 810, 813 (7th Cir. 2007); *United States v. Gwiazdzinski*, 141 F.3d 784, 787 (7th Cir. 1998). Moreover, all of Mosley's arguments for recusal rested on his belief that the judge's pretrial rulings and courtroom comments showed him to be in cahoots with the government, but Mosley did not allege that anything the court said or did was in response to information derived from an extrajudicial source. Thus, whether Mosley was asserting actual bias, see 28 U.S.C.

§§ 144, 455(b)(1), or the appearance of bias, see *id*. § 455(a), his allegations did not present a valid basis for disqualification. See *Liteky v. United States*, 510 U.S. 540, 553-54 (1994) (concluding that the extrajudicial source requirement also applies to § 455(a)).

We thus affirm the judgment in case no. 06-1478, and turn to Mosley's related appeal, case no. 08-3054. After Mosley was released from prison, his probation officer sought to implement the special condition of supervised release requiring Mosley to submit to a mental-health evaluation. In June 2008, Mosley filed a *pro se* motion asking the court to stay enforcement of that condition pending the resolution of his direct appeal. Mosley characterized the required evaluation as just more evidence of bias, and when the judge refused to stay its implementation, Mosley filed a notice of appeal. His only contention, however, is that the condition should have been stayed until we decided his direct appeal, and he makes no argument that it was error to order the mental-health evaluation as a special condition of supervised release. The parties do not say whether the evaluation went forward after Mosley's request for a stay was denied, but our resolution of his direct appeal has rendered moot the question about delaying its enforcement.

Mosley's remaining appeal, case no. 06-2740, concerns Judge Shadur's revocation of his supervised release from his 1999 conviction for bank fraud, see 18 U.S.C. § 1344. Mosley had been sentenced to twelve months and one day in prison, along with five years of supervised release. He contends only that the district court overstated his criminal history category—from III to IV—when calculating the advisory guidelines range for reimprisonment. Mosley did not make this argument at the revocation hearing. The government concedes the mistake, which increased the upper end of the advisory range from 14 to 18 months, but argues that Mosley has not established plain error.

When revoking a term of supervised release, the district court looks to U.S.S.G. § 7B1.4(a) in calculating the range for reimprisonment. That policy statement makes clear that the criminal history category from the original sentencing is to be used again. See *id*. § 7B1.4(a) cmt. n.1. Mosley had a criminal history category of III when he was sentenced in 1999, and thus it was error to use a higher category to calculate his range of reimprisonment. Because we are reviewing only for plain error, however, it is Mosley who bears the burden of demonstrating an error that is plain, that affects his substantial rights, and that, if left uncorrected, seriously affects the "fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732-36 (1993). The error here is plain, and it arguably affected Mosley's substantial rights because the transcript of the revocation hearing suggests that Judge Shadur was inclined to impose a term of reimprisonment in the middle of the policy-statement range, which, if correctly calculated, would have been 8 to 14 months.

Nevertheless, this is an error that has no practical consequences for Mosley. Even if we were to remand the case, no change in Judge Shadur's revocation sentence could provide Mosley with any meaningful relief. Mosley's term of reimprisonment cannot be shortened because he has already served his time, and any extra time he arguably spent in prison cannot be credited towards his supervision. *United States v. Johnson*, 529 U.S. 52, 58-59 (2000). Although Judge Shadur could decide to shorten the two-year term of supervised release to compensate for the error, Mosley will still be serving the longer, concurrent term of supervised release imposed by Judge Der-Yeghiayan for his new convictions and thus his overall time on supervision will not change. The fourth prong of the plain error test is thus not satisfied – the integrity of the judicial system is not compromised by an error that cannot be remedied, particularly when a remedy would have been available if Mosley had raised a timely objection to the miscalculation in the district court.

The judgments in case nos. 06-1478 and 06-2740 are AFFIRMED. Case no. 08-3054 is DISMISSED.