NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 12, 2012
Decided August 22, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 11-3600

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:10-cr-30209-GPM-1 |
| DANWINE DEWAYNE RENARD, *Defendant-Appellant*. | G. Patrick Murphy, *Judge*. |

**O R D E R**

Danwine Renard pleaded guilty to bank fraud and aggravated identity theft as well as conspiracy to commit bank fraud, mail fraud, and wire fraud. He was sentenced to a total of 144 months' imprisonment, the bottom of the Guidelines range. On appeal he argues that the district court overstated his Guidelines offense level by counting roughly $77,000 in uncashed fraudulent checks as part of the intended loss amount. Had those checks been excluded, the bottom of Renard's imprisonment range would have been ten months lower. But Renard waived this argument at sentencing, and regardless the checks were properly included. We affirm the district court's judgment.

Renard was serving time in Missouri for check kiting when he conspired with his wife, Selena Bradford, to carry out the fraud scheme that landed him in his current trouble. Following Renard's directions and advice, Bradford (assisted by her 17-year-old son) stole people's identities, opened numerous bank accounts in the identity-theft victims' names, and began to deposit checks drawn on one account into another. She would then withdraw the deposits from ATMs before the checks could be returned for insufficient funds. With Renard's encouragement and know-how, Bradford also used the stolen identities to obtain food stamps from the Illinois Department of Human Services. The couple agreed that Renard would share in the spoils of these crimes upon his release.

One bank account that Bradford opened at Renard's direction was a business account at the Bank of Edwardsville in the name of a fictitious company, Desert Fox Gaming. After opening the account, Bradford had bogus Desert Fox payroll checks created and made out to various identity-theft victims. The plan was to deposit these worthless checks and withdraw the funds, but the conspirators were arrested before this part of the scheme could be completed. These checks totaled $77,400.80.

Renard was charged with one count of bank fraud, 18 U.S.C. § 1344, two counts of aggravated identity theft, *id.* § 1028A(a)(1), and one count of conspiracy to commit mail fraud, bank fraud, and wire fraud, *id.* §§ 1349, 1344, 1341, 1343. He pleaded guilty to all counts without a plea agreement and stipulated to a factual basis that acknowledged his role in the "Desert Fox" portion of the scheme. His probation officer then prepared a presentence report detailing the losses actually caused by the scheme—$122,943.72—as well as the additional loss that the conspirators had intended to cause by negotiating the Desert Fox checks—$77,400.80—for a total of $200,344.52 in intended losses. Based in part on an offense-level increase of 12 for intended losses exceeding $200,000 but less than $400,000, *see* U.S.S.G. § 2B1.1(b)(1), the probation officer calculated Renard's guidelines imprisonment range at 120 to 150 months on the conspiracy count plus an additional 24 months on the identity-theft counts. (A two-year prison sentence for aggravated identity theft is mandatory and must be served consecutively to any sentence for another offense. 18 U.S.C. § 1028A(a)(1), § 1028A(b); U.S.S.G. § 2B1.6.)

At the sentencing hearing, the district judge asked Renard's lawyer, who is also representing him in this appeal, whether he had any objections to the presentence report. The lawyer replied that he wanted to make just one clarification: The presentence report refers to a "plea agreement," but Renard had pleaded guilty without an agreement. Counsel said that otherwise he had no objections or corrections to make. The judge then adopted the report's factual recitation with the clarification that the parties had not entered into a plea agreement,

and he gave both the prosecution and defense an opportunity to argue for a particular sentence. Renard's lawyer, in advocating for leniency, said of the loss amount:

> I would just ask the Court to consider that a 12-level enhancement occurred because the loss exceeded $200,000.

> It exceeded it ostensibly by $344.52. That amounts to qualifying this for a plus 200,000, less than 400,000. We think that's significant. It certainly does break the threshold there, but we ask the court to consider that among its factors.

The judge imposed a total of 144 months of imprisonment to be followed by 5 years of supervised release.

Renard's appellate brief is difficult to decipher. Apparently he contends that the district judge erred by adopting the probation officer's loss calculation—specifically the inclusion of the Desert Fox checks—without explicitly finding on the record that those checks should be attributed to him as intended loss. Aside from this purported procedural problem, he identifies no reason to doubt the propriety of including the checks in the loss amount.

The argument Renard is making is frivolous. He waived any challenge to the loss calculation when his attorney explicitly declined to contest the facts in the presentence report and stated that the loss amount "certainly does break the threshold" of $200,000. *See United States v. Adcock*, 534 F.3d 635, 641 (7th Cir. 2008). And even if the argument had been merely forfeited, it's a loser. Loss amount is a fact question, *United States v. Borrasi*, 639 F.3d 774, 783 (7th Cir. 2011), and sentencing judges are permitted to adopt the proposed facts in the presentence report to which there are no objections, FED. R. CRIM. P. 32(i)(3)(A); *United States v. Rodgers*, 610 F.3d 975, 979 (7th Cir. 2010); *United States v. Sonsalla*, 241 F.3d 904, 907–08 (7th Cir. 2001); *United States v. Wing*, 135 F.3d 467, 469 (7th Cir. 1998). Renard misleadingly quotes *United States v. Ross*, 502 F.3d 521, 531 (6th Cir. 2007), as saying that a "Court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence." Renard has left out, however, the crucial first clause of that sentence: "*[I]f the defendant raises a dispute to the presentence report*, the court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence." *Ross*, 502 F.3d at 531 (quotation marks and citation omitted) (emphasis added). Renard, as explained, did not dispute the report; he endorsed it.

Before sentencing, Renard submitted to the district court a pro se, ex parte document entitled "Defendant's Statement of Mitigating Factors and Suggestion of Reasonable Sentence." In this court, the government says that Renard's submission could be read as a challenge to the loss amount but argues that counsel's statements at the sentencing hearing constituted an abandonment of the objection if that's what it was. The government's abandonment argument is sound, *see United States v. Knox*, 624 F.3d 865, 875 (7th Cir. 2010); *United States v. Walker*, 237 F.3d 845, 851–52 (7th Cir. 2001), but its concession is needless. The district judge declined to read Renard's pro se submission, which is a permissible choice when a defendant is represented by counsel, *see United States v. Patterson*, 576 F.3d 431, 436–37 (7th Cir. 2009); *United States v. Williams*, 495 F.3d 810, 813 (7th Cir. 2007). Moreover, we do not agree with the government that Renard's submission could be construed as an objection to the inclusion of the Desert Fox checks; his only reference to the checks reads more like an acknowledgment that they should be included.

The judgment of the district court is AFFIRMED.