In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2404

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CORY L. WILLIAMS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:12-cr-20011-SLD — **Sara Darrow**, *Chief Judge.*

SUBMITTED FEBRUARY 5, 2021* — DECIDED FEBRUARY 10, 2021

Before WOOD, SCUDDER, and ST. EVE, *Circuit Judges.*

PER CURIAM. Cory Williams, a federal inmate, sought compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The district court denied the motion, bypassing the government's

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

defense that Williams did not exhaust his remedies with the Bureau of Prisons and concluding that he had not shown circumstances warranting his release. We agree with the court's bottom line, but we take this opportunity to explain why, even if one thought that Williams had made a compelling case on the merits, he failed to exhaust.

Williams has been seeking release from prison ever since he began serving an 18-year sentence in 2013 for three counts of robbery, see 18 U.S.C. §§ 1951(a), 2113(a), (d), and one count of brandishing a firearm, see *id.* § 924(c). Less than a year after his sentencing, he moved under 28 U.S.C. § 2255 to vacate his sentence, contending that his guilty plea was involuntary because the judge had participated in plea negotiations. The district court denied the motion, and we affirmed because, although the judge violated Federal Rule of Criminal Procedure 11, the error did not adversely affect Williams's due-process rights. See *Williams v. United States*, 879 F.3d 244, 249 (7th Cir. 2018).

Williams renewed his efforts for release in April 2020. He asked his prison's warden to move for his compassionate release, arguing that the judge's role in his plea negotiations was an "extraordinary and compelling" reason for that relief. 18 U.S.C. § 3582(c)(1)(A)(i). The warden never responded, and so in June 2020 Williams moved the district court for compassionate release on the same ground. The court appointed counsel for Williams. Counsel filed an amended motion, which advanced an entirely different ground: that the COVID-19 pandemic and Williams's risk of exposure to the virus stemming from his role as an usher in the prison's chapel justified his release. The government opposed the motion on the merits, but it also argued that Williams had not

met the statute's exhaustion requirement because his request to the warden did not raise the ground now pursued in his amended motion.

The district court denied the motion. It skipped over the exhaustion point and denied the counseled motion on the merits. The court noted that Williams admitted that he did not suffer from any significant medical conditions that might increase his risk for complications from COVID-19. The presence of the virus in Williams's prison and his alleged risk of increased exposure to the virus because of his role as an usher, the court thought, were not extraordinary and compelling circumstances warranting release.

By taking this approach, the district court left open the question whether Williams's requests to the warden for release based on the trial errors sufficed to support an argument based on COVID-19. The question whether particular *issues* must be exhausted is a recurring one, and so we think it important to clarify our position on it. A court may *grant* an inmate's request for compassionate release only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or "the lapse of 30 days" from the receipt of such a request by the warden without response—whichever is earlier. § 3582(c)(1)(A). Unless the defense is jurisdictional, however, the court is free to *deny* such a motion for any reason that is supported in the record. The government properly raised exhaustion—a nonjurisdictional defense—in the district court, arguing that Williams never raised the COVID-19 ground for release with the prison's warden. It re-asserts this defense on appeal. We recently ruled that the exhaustion defense "is a mandatory, claim-processing rule and therefore

*must* be enforced when properly invoked." *United States v. Sanford,* No. 20-2445, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021) (emphasis original). The facts relevant to exhaustion are not in dispute, and they show that Williams failed properly to exhaust his remedies with the Bureau.

The problem is that in his counseled motion, Williams sought compassionate release based on the risks of COVID-19, but he never asked the Bureau to seek his release on that ground. Instead, he asked the Bureau to seek compassionate release based on his trial judge's conduct. We have not yet had occasion to consider whether, in order properly to exhaust, an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court. But now that the issue is squarely before us, we confirm that this is the rule—any contrary approach would undermine the purpose of exhaustion.

The exhaustion requirement is designed to allow the Bureau to bring "a motion on the defendant's behalf," before he moves on his own behalf. § 3582(c)(1)(A). And the Bureau cannot determine whether it should bring a compassionate-release motion if an inmate does not explain in his request the ground justifying his release. The Bureau's regulations implementing an earlier version of the statute (which did not permit inmates to move for release on their own) reinforce the necessity of this information, instructing inmates that a request for release under § 3582(c)(1)(A)(i) "shall at a minimum contain … [t]he extraordinary or compelling circumstances that the inmate believes warrant consideration." 28 C.F.R. § 571.61(a)(1).

We have not found an appellate decision addressing this issue, but we recognize that some district courts have reached

a conclusion contrary to ours. These courts reason that § 3582(c)(1)(A) does not explicitly require "issue exhaustion." See, *e.g., United States v. Brown*, 457 F. Supp. 3d 691, 696–98 (S.D. Iowa 2020); *United States v. Torres*, 464 F. Supp. 3d 651, 654–57 (S.D.N.Y. 2020). They rely on *Sims v. Apfel*, 530 U.S. 103, 112 (2000), a Social Security case, which cautioned courts to refrain from imposing issue-exhaustion requirements, particularly where there is no adversarial administrative proceeding, *id.* at 108–110, 112, as is true of the Bureau's compassionate-release procedures.

But these decisions do not persuade us for several reasons. First, they overlook the purpose of § 3582(c)(1)(A)'s exhaustion requirement—to provide the Bureau with the information necessary to move for release on a defendant's behalf. Second, some fail to consider the Bureau's regulation requiring an inmate to detail the circumstances warranting his compassionate release. 28 C.F.R. § 571.61(a)(1). See *Brown*, 457 F. Supp. at 696–98. Third, though this is not dispositive, they did not involve a situation in which the unrelated ground presented to the Bureau was frivolous. See *id*; *Torres*, 464 F. Supp. at 665.

In our view, § 3582(c)(1)(A)'s exhaustion requirement more closely resembles the exhaustion requirement in the Prison Litigation Reform Act, see 42 U.S.C. § 1997e(a), than the Social Security regulations addressed in *Sims*. That Act requires "proper exhaustion" of available administrative remedies in order to afford prisons an opportunity to address issues before they are brought to federal court. See *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); § 1997e(a). Consistent with that statutory scheme, an inmate cannot satisfactorily exhaust under the PLRA by filing a grievance on one ground and then

suing in court on an unrelated ground. See *id.*; *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020). Thus, because Williams never asked the Bureau to move the district court for his release based on the presence of COVID-19 at his prison and his risk of infection, his counsel could not properly file a motion for compassionate release on that basis.

In an effort to salvage his case, Williams responds that the district court should have considered only the argument for release in his initial, pro se motion, which was limited to the trial-judge issue, rather than the ground presented in his counseled, amended motion. But in appointing counsel for Williams (a decision that Williams did not oppose), the district court did not abuse its discretion. At that point, the court was entitled to limit its consideration to the arguments counsel presented. See *United States v. Patterson*, 576 F.3d 431, 436 (7th Cir. 2009) (courts have discretion to consider or disregard pro se filings from represented litigants); *United States v. Williams*, 495 F.3d 810, 813 (7th Cir. 2007) (represented litigants have no right to file pro se motions). In any event, we have already determined that Williams's pro se argument lacks merit because the judge's participation in his plea negotiations did not violate his due-process rights. *See Williams*, 879 F.3d at 249. Even if his pro se motion was exhausted and properly before the court, it was meritless.

We therefore AFFIRM the judgment of the district court rejecting Williams's application for compassionate release.